# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| **Aaron Private Clinic Management LLC.** | ) | **Case No. 1:17-cv-01034-WSD** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Action for Violations of the** |
| **v.** | ) | **Rehabilitation Act,** |
| | ) | **29 U.S.C. § 701 et seq.** |
| **Frank W. Berry, in his Official** | ) | **and the Americans with** |
| **Capacity as Commissioner for the** | ) | **Disabilities** |
| **Georgia Department of Community** | ) | **Act** |
| **Health; and, Nathan Deal, in his** | ) | **42 U.S.C. § 12101 et seq.** |
| **Official Capacity as Governor of** | ) | |
| **Georgia.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | | |
| _____ | | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

James A. Dunlap Jr., Esq.
James A. Dunlap Jr. & Assoc. LLC
Georgia State Bar No.  003280
4403 Northside Parkway NW
Suite 1413
Atlanta, Georgia  30342
404-354-2363
404-745-0195 (fax)
jim@jamesdunlaplaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................ii

INTRODUCTION ........................................................................... 1

STANDARD OF REVIEW ................................................................ 3

ARGUMENT AND CITATION OF AUTHORITY ............................. 3

**A.** **Plaintiff has standing to sue. ..........................................3**

   1.   Plaintiff has standing based upon a "direct injury."    3

      a)   Title II's plain language provides Plaintiff standing. .......................4

      b)   Title II does not limit remedies to the disabled.................................4

      c)   Federal courts allow "direct injury" standing in  addiction clinic ADA cases...................................................5

   2.   Plaintiff has representational standing.    5

      a)   Federal courts endorse representational standing in  similar cases...5

      b)   The Eleventh Circuit endorses representational  standing for the mentally ill.............................................7

   3.   Plaintiff has associational standing under the ADA.    9

      a)   Federal courts find associational standing in Title II........................9

      b)   Title II regulations provide associational standing. ........................10

      c)   Federal courts reject Defendants' standing argument. ...................11

      d)   *Todd v. Carstarphen* is distinguishable from this case...................11

**B.** **The Licensing Moratorium and the License Cap violate the ADA...12**

   1.   The Defendants' rules are facially discriminatory.    13

   2.   Addiction clinics pose no significant risk.    14

   3.   The Defendants' rules are based on proliferation concerns.    14

   4.   Rules based on proliferation concerns violate  the ADA.    16

   5.   Licensing moratoria violate the ADA.    17

   6.   The Defendants' rules fail the  "rational basis" test.    18

**C.** **Defendants' intentional conduct entitles Plaintiff to damages. .........20**

**D.** **Defendants are not entitled to Eleventh Amendment immunity.......21**

1.    Defendants are not entitled to immunity under the ADA.          21

2.    Defendants are not entitled to immunity under the RA.           23

**E.    Plaintiff is entitled to declaratory and injunctive relief. ....................23**

Plaintiff Aaron Private Clinic Management LLC ("APC") files this Brief in Opposition to Defendants' Motion to Dismiss [Doc. 23][1] as follows:

## INTRODUCTION

The Supreme Court has declared that the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12001 *et seq.,* is the Congress' "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life."[2]

APC alleges that the Defendants discriminate against APC and disabled individuals APC intends to treat, including pregnant women and their unborn children, in violation of title II of the ADA, 42 U.S.C. §§ 12131 *et seq.,* and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. Sec. §§ 794 *et seq*., and their respective implementing regulations.[3] .

APC brings this action to seek a judicial remedy under the ADA and the RA

---

[1] Defendant's Motion to Dismiss is addressed to Plaintiff's First Amended Complaint [Doc. 19].

[2] *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 675 (2001).

[3] For simplicity, this brief will refer to the "ADA" although, unless specified, the arguments herein apply equally to the RA as well.

arising from unlawful policies and conduct that unduly burden and block expansion for addiction treatment to the disabled in Georgia, specifically, O.C.G.A. Section 26-5-21 ("Licensing Moratorium") and O.C.G.A. Section 26-5-40 et seq.[4] ("License Cap") that illegally discriminate against the disabled, including barring the Department of Community Health ("DCH") from accepting new licenses to expand, and imposing new burdensome rules on applicant's seeking to treat the disabled in Georgia. These rules illegally burden and block APC from establishing an Opioid Treatment Program ("OTP") in Georgia.[5]

APC asks this Court to find and declare the Licensing Moratorium and the License Cap facially invalid under the ADA and the RA, enjoin Defendants Frank W. Berry, in his Official Capacity as Commissioner for the Georgia Department of Community Health; and, Nathan Deal, in his Official Capacity as Governor of Georgia, (collectively "Defendants") prospectively from enforcing the Licensing Moratorium and the License Cap, award APC damages, and provide APC other relief.

---

[4] Specifically including, without limitation, O.C.G.A. Sections 26-5-46, 26-5-47, 26-5-48, and 26-5-58.
[5] An Opioid Treatment Program or ''OTP'' means a program or practitioner engaged in opioid substitution treatment of individuals with an opioid agonist medication [i.e., methadone]." 42 C.F.R. 1 Subpart A Sec. 8.2.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must construe all facts in the light most favorable to the Plaintiff. *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1261 (11th Cir. 2006).   A statute or rule that facially discriminates against disabled individuals requires a "skeptical inquiry" under the ADA and RA. *New Directions Treatment Serv. v. City of Reading*, 490 F.3d 293 (3rd Cir. 2007).

## ARGUMENT AND CITATION OF AUTHORITY

### A.    Plaintiff has standing to sue.

Plaintiff has three separate and independent bases of standing--direct injury standing; representational standing; and, associational standing under the ADA.  Any single one of these bases is sufficient to allow Plaintiff to recover on all its claims.  These bases for standing are discussed *seriatum*.

### 1.    Plaintiff has standing based upon a "direct injury."

By illegally burdening and denying Plaintiff the opportunity to obtain a license to serve the disabled, Defendants have inflicted an "injury-in-fact" upon Plaintiff sufficient to guarantee "concrete adverseness" and to satisfy the Supreme Court's constitutionally-based standing requirements imposed by Art. III.   U.S. Const. art. III, § 2, cl. 1;  *Craig v. Boren*, 429 U.S. 190, 194 (1976)(vendor has standing to challenge state statute based in part upon lost

3

sales from hypothetical customers to be served).

### a)     Title II's plain language provides Plaintiff standing.

The enforcement provision of Title II affords "any person" the "remedies, procedures, and rights" of the ADA when alleging discrimination on the basis a disability.  42 U.S.C.  § 12133.   Similarly, the RA extends its remedies to "any person aggrieved by any act or failure to act by any recipient of Federal assistance . . . under section 794 of this title." 29 U.S.C. § 794a(a)(2). Courts have construed the phrase "any person aggrieved" as an expression of Congressional intent to accord standing to the fullest extent permitted by the case and controversy provision of Article III.  *Weber v. Cranston School Committee*, 212 F.3d 41, 47 (1st Cir. 1999).  Plaintiff has alleged it sustained direct economic injuries proximately caused by the Defendants' violations of the ADA.  Doc. 1 ¶¶ 56, 64, 67, 71, 73.

### b)     Title II does not limit remedies to the disabled.

As noted by the Fourth Circuit in *A Helping Hand*, although Title II contains no express right to be free from discrimination because of association with qualified individuals with disabilities, Title II's enforcement provision does not limit its remedies to individuals with disabilities.  *Helping Hand, LLC v. Baltimore County, Md,* 515 F.3d 356, 364 (4th Cir. 2008).  In fact, Title II

4

expressly provides a remedy to "any person alleging discrimination on the basis of disability in violation of section 12132." *Id.*; 42 U.S.C. § 12133 (emphasis added); *see also* 1 U.S.C. § 1 (2000) (defining "person" to include various entities). This broad language in the enforcement provision "evinces a congressional intention to define standing to bring a private action ... as broadly as is permitted by Article III of the Constitution." *MX Group, Inc. v. City of Covington,* 293 F.3d 326, 334 (6th Cir. 2002)(*quoting Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir.1997); *A Helping Hand,* 515 F.3d at 364.

### c) Federal courts allow "direct injury" standing in addiction clinic ADA cases.

Federal courts hold that addiction clinics are entitled to bring a claim under the ADA arising from an injury-in-fact they sustained because of their association with ADA-protected persons. *Id.* at 363–64, *citing with approval MX Group, Inc. v. City of Covington*, 293 F.3d at 335.

### 2. Plaintiff has representational standing.

### a) Federal courts endorse representational standing in similar cases.

In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 334 (1977), the Supreme Court established a three-part test for representational

standing generally. Under *Hunt*, "an association has standing to bring suit on behalf of its members [or constituents] when: (a) its members [or constituents] would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members [or constituents] in the lawsuit." *Id.*, The Eleventh Circuit has endorsed this approach and held whether an organization has "members" or "constituents" is immaterial to Article III standing. *Doe v. Stincer,* 175 F.3d 879, 885 (11th Cir. 1999). All three elements of the *Hunt* standing criteria are satisfied in this case.

The Supreme Court has also declared that vendors subject to statutory sanctions or loss of sales have standing to assert the rights of their customers. *Craig*, 429 U.S. at 194. In *Craig*, the Supreme Court held that a liquor vendor, subject to sanctions and loss of license for violation of the statute, was a proper party in interest to object to the enforcement of the allegedly discriminatory law, because obedience to the law would cause loss of sales and disobedience risked sanctions from the state. *Id.* "Accordingly," the Court explained, "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Id.* Plaintiff is such a "vendor" in

this case.

The Supreme Court has endorsed representational standing in the confidential healthcare context. *Griswold v. State of Connecticut*, 381 U.S. 479, 481 (1965)(clinic director has standing to assert rights of hypothetical patients). Plaintiff has alleged that its prospective patients have suffered an injury that would allow it to bring suit in their own right.  .  Doc. 1 ¶¶  56, 64, 67, 71, 74 (Complaint).

### b)      The Eleventh Circuit endorses representational standing for the mentally ill.

Drug addiction is a mental illness.[6] Plaintiff alleges that it seeks to provide medical and counseling services those suffering from this mental illness.  Doc. 1 ¶¶ 29, 74.  The Eleventh Circuit has declared that "the standing of protection and advocacy systems as representatives of the segment of our society afflicted with mental illness is well-established in the law." *Stincer*, 175 F.3d at 884.  There is no requirement that a party suing as a representative specifically name the individual on whose behalf the suit is brought. *Id*. at 885-86, *citing Church of Scientology v. Cazares*, 638 F.2d 1272, 1278 (5th Cir. 1981)("[T]he requisite for

_____

[6] "Comorbidity: Addiction and Other Mental Illnesses," National Institute on Drug Abuse (2010)(drug addiction is a mental illness).

representational standing ... is not necessarily an explicit statement of representation but a close nexus between the organization and its members and an allegation of injury to its members as a result of the action") (citations omitted); *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 102 (5th Cir.1963) (upholding right of civil rights organization to assert the constitutional rights of its members despite the fact that pleadings did not seek relief on behalf of any specific member).

In this case, individuals (including minors and the unborn) who are addicted to opiates endure withdrawal symptoms that include abdominal cramping, diarrhea, nausea, and vomiting (and are deemed qualified individuals with a disability under the ADA).[7]  It's not reasonable to expect that only these persons must solely and exclusively represent themselves to challenge the Defendants' violations of the ADA.[8]  Therefore, under the Supreme Court's and the Eleventh Circuit's principles of representational standing, Plaintiff is entitled to assert the rights of its prospective mentally ill and disabled patients in this case.

---

[7] Federal courts recognize that individuals addicted to opiates are qualified individuals with a disability under the ADA.  *Mx Group*, 293 F.3d at 337.

[8] "Opiate and Opioid Withdrawal," Medline Plus Medical Encyclopedia (2016)(https://medlineplus.gov/ency/article/000949.htm).

### 3.     Plaintiff has associational standing under the ADA.

The Eleventh Circuit has "made clear" that prospective medical providers to the disabled have associational standing to bring ADA claim against state entities. *Mccullum ex rel. TF v. Orlando Reg'l Healthcare Sys., Inc.,* 768 F.3d 1135, 1142 (11th Cir. 2014)("That much is clear.")(citations). In *Mccullum* (though involving a Title III claim itself), the Eleventh Circuit expressly approved of cases that conferred associational standing involving Title II claims. *Mccullum,* 768 F.3d at 1142.

### a)     Federal courts find associational standing in Title II.

Every federal circuit that has considered whether an addiction clinic has standing under Title II of the ADA to bring a claim based on injuries resulting from its association with the addicted persons it serves has found that the clinic has standing. *Addiction Specialists, Inc.*, 411 F.3d at 405-07; *MX Group*, 293 F.3d at 331-36; *Innovative Health Sys*., 117 F.3d at 46-48. *A Helping Hand,* 515 F.3d at 364; *contra Todd v. Carstarphen*, Case No. 16-cv-3729, February 17, 2017 at 53 (N.D. Ga., 2017). The Fourth Circuit in *A Helping Hand* found Title II associational standing "particularly reasonable" when looking to "the text of the statute as a whole and the accompanying legislative history." *Id*.

9

**b)      Title II regulations provide associational standing.**

Congress specifically directed the Attorney General to promulgate regulations implementing Title II that "shall be consistent with this chapter." 42 U.S.C. § 12134(a), (b); see also H. R. Rep. No. 101-485(111), at 52 (1990), as reprinted in 1990 U.S.C.C.A.N. 445, 475 ("The Committee intends that the regulations under title II incorporate interpretations of the term discrimination set forth in titles I and III...."); H. R. Rep. No. 101-485(II), at 84 (1990), as reprinted in 1990 U.S.C.C.A.N. 303, 367 ("[T]he construction of `discrimination' set forth in section 102(b) and (c) and section 302(b) should be incorporated in the regulations implementing this title."). Accordingly, the Attorney General promulgated regulations implementing Title II that do indeed bar associational discrimination. These regulations explicitly prohibit local governments from discriminating against entities because of the disability of individuals with whom the entity associates. 28 C.F.R. § 35.130(g).

In addition, the Department of Justice has advised that Title II protects individuals or entities from being denied or excluded from services, programs or activities because of association with an individual with a disability.  *Id*., app. A.; *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 838 (1984)(courts should defer to agency interpretations of statutes unless they are

unreasonable); *contra Todd*, Case No. 16-cv-3729, February 17, 2017 at 53

(N.D. Ga., 2017)(citing *Chevron*, no deference where statute is unambiguous).

### c) Federal courts reject Defendants' standing argument.

In *A Helping Hand*, the Fourth Circuit considered, and rejected

Defendants' standing argument and found that an addiction clinic had standing

to bring claims under Title II of the ADA.  *A Helping Hand*, 515 F.3d at 364

(citations);  *Mx Group*, 293 F.3d at 326; *contra Todd v. Carstarphen*, Case No.

16-cv-3729, February 17, 2017 at p. 53 (N.D. Ga., 2017)(no associational

standing under Title II).

### d) *Todd v. Carstarphen* **is distinguishable from this case.**

Defendants' lone authority, this Court's decision in *Todd v. Carstarphen*,

is clearly distinguishable from this case. *Todd v. Carstarphen*, Case No. 16-cv-

3729, February 17, 2017 (N.D. Ga., 2017).   There existed no injury-in-fact or

traditional representational standing in *Todd*.  Indeed, in *Todd* there was no

direct injury-in-fact.  *Id.*  at p. 35 ("Todd is not entitled to the public benefit she

seeks.").  Second, in *Todd*, the individuals whose rights the plaintiff sought to

associate with were <u>not disabled</u>. *Id.* at p. 4 ("The Plaintiff Children are not

disabled."). This Court in *Todd* was simply not presented with a viable claim

arising from an ADA-protected individual.    *Todd* did not involve a close

11

medical/counselor-patient relationship like in this case.  Thus, *Todd* decided

solely an associational standing case and the analysis in *Todd* does not preclude

a finding of direct injury or representational standing in this case.

In fact, this Court in *Todd* acknowledged that a "broad interpretation" of

Title II would allow "any person aggrieved" to bring a claim arising from

"discrimination against a disabled person."  *Id*. at n. 54 and 58.  Such "broad

interpretation" is exactly what Congress intended under the facts of this case.

*PGA Tour,* 532 U.S. at 675.

### B.  The Licensing Moratorium and the License Cap violate the ADA.

"Simply put, [an addiction] clinic cannot be treated differently than a

medical clinic that is serving as an ordinary medical clinic."  *Freedom*

*Healthcare Servs., Inc. v. Zoning Hr'g Bd.*, 983 A.2d 1286, 1292 (Pa. Commw.

Ct. 2009), citing *New Directions*, 490 F.3d 293, 304.  The Licensing Moratorium

and the License Cap violate the ADA because they discriminate against people

with disabilities on the basis of their disability, both on their face and by their

intent.  Unlike similar medical businesses which are permitted to locate as of

right in Georgia, all new addiction treatment clinics are flatly and completely

barred by the Licensing Moratorium and the License Cap.  Doc. 19 ¶¶ 44, 54

(Complaint).

### 1.     The Defendants' rules are facially discriminatory.

The Licensing Moratorium and the License Cap clearly single out clinics serving the disabled.  Doc. 19 § 48, 49 (moratoria on licensing and numerous procedural burdens).  The Third, Sixth, and Ninth Circuits have held that "a law that singles out addiction clinics for different licensing procedures is facially discriminatory under the ADA and the RA." *New Directions*, 490 F.3d at 305; *MX Group*, 293 F.3d at 344-45 (clinic cap violates ADA); *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730- 37 (9th Cir. 1999).

A facially discriminatory law violates the ADA unless the treatment program can be shown to pose a direct threat or significant risk to the health or safety of others.[9]  The State of Georgia's Licensing Moratorium and the License Cap restricting addiction clinics are facially discriminatory because: (1) addiction clinics are subjected to more restrictive standards than comparable medical facilities; and (2) individuals seeking treatment at addiction clinics do not pose a direct threat to the health or safety of others that would justify more

---

[9] *New Directions*, 490 F.3d at 306-07; *Bay Area*, 179 F.3d at 737; *Habit*, 235 F.Supp.2d at 29.  .

burdensome treatment.[10]

### 2.    Addiction clinics pose no significant risk.

The Department of Justice's ADA Title II Technical Assistance Manual provides for a significant risk test: "An individual who poses a direct threat to the health or safety of others will not be `qualified' as an individual protected by title II." TA Manual § II-2.8000.  "[T]his [significant risk] test ensures that decisions are not made on the basis of "the prejudiced attitudes or the ignorance of others." *School Board of Nassau County v. Arline*, 480 U.S. 273, 284 (1987), *cited in Bay Area*, 179 F.3d at 736; *New Direction*, 490 at 303.

Numerous federal courts have found that addiction clinics pose no significant risk or direct threat to the health or safety of others.[11]

### 3.    The Defendants' rules are based on generalized proliferation concerns.

On their face, the Licensing Moratorium and the License Cap are based on generalized proliferation concerns that federal courts have ruled violate the ADA.  Section I of Senate Bill 402 that created the Licensing Moratorium (and

---

[10] *See also Habit*, 235 F. Supp. 2d at 29; *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 342-43 (Pa. Commw. Ct. 2014).

[11] See*, e.g.,  Bay Area, 17*9 F.3d at 733; *MX Group,* 293 F.3d at 342; *New Directions*, 490 F.3d at 306-7 (*citations).

subsequently adopted by Senate Bill 88 establishing the License Cap) sets forth express "findings" that clearly manifest animus and fears of proliferation of treatment options for opiate addicted persons.  Specifically, Senate Bill 402 set forth following general crime and proliferation concerns:

Senate Bill 402 found:  "There is a growing concern as to the numbers and concentration of narcotic treatment programs located in certain parts of this state and that concentration of such narcotic treatment programs is in cities along Georgia's borders with neighboring states."  2016 Ga. Laws 343 § 1(2). Obviously, this amounts to an expression of concern that there is "too many clinics" serving the disabled in the Georgia--despite the fact that 1,300 Georgians died of overdoses in 2015.  Doc. 19 ¶ 35 (Complaint).  This is akin to communities in the Jim Crow South declaring there were "too many restaurants serving black people (or Jews, etc.)."  This language also amounts to saying "there are too many disabled coming from out-of-state."

Senate Bill 402 also found:  "There are reported and documented increases in heroin addiction and overdoses throughout this state."  2016 Ga. Laws 343 § 1(2).  This statement appears to acknowledge the rational conclusion the disabled are dying from lack of treatment and that more overdose deaths indicates a need for more treatment for the disabled, not less.

15

Senate Bill 402 also found:  "There is a grave concern over the public's well-being concerning the potential abuses of methadone and its relationship to geographic proximity…."  2016 Ga. Laws 343 § 1(4).  This amounts to saying we can't allow people with opioid addiction in "too close proximity" to Georgia communities.  This is clearly a groundless, generalized fear of the disabled.

Senate Bill 402 also found:  "Georgia is eighth in population but third nationally in the number of narcotic treatment programs."  2016 Ga. Laws 343 § 1(5).  Obviously, this amounts to a generalized proliferation concern that there are "too many" or "an excessive amount of" clinics treating the disabled.[A1][A2]

### 4.   Rules based on generalized proliferation concerns violate the ADA.

Federal courts declare that generalized proliferation concerns, or generalized fears of crime, are not a sufficient basis to discriminate under the ADA.  *Innovative Health Sys.*, 931 F. Supp. at 240 ("Although a city may consider legitimate safety concerns in its zoning decisions, it may not base its decisions on the perceived harm from . . . stereotypes and generalized fears."), *cited with approval in Bay Area,* 179 F.3d at 737.  Indeed, numerous federal

16

courts have relied on statements about *proliferation* to find discriminatory intent. *RECAP v. City of Middletown*, 294 F.3d 35 (2nd Cir. 2002).[12]

Federal courts hold that "community views may be attributed to government bodies when the government acts in response to these views."[13]  In this case, in addition to holding their own discriminatory views, the Georgia politicians apparently felt obligated to represent their constituents' views and were responsive to their constituents' animus.[14]  [A3][A4]

### 5.    Licensing moratoria violate the ADA.

Federal courts hold that licensing moratoria on services for the disabled-- even if only temporary--violate the ADA .  *MX Group*, 293 F.3d at 326; *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1149 (9th Cir.

---

[12] *Id.* at 50-51; *see also  Horizon House Dev. Servs. Inc. v. Twp. of Upper Southampton,* 804 F. Supp. 683, 690 (E.D. Pa. 1992) (a town official's statement that thirty group homes was "enough" for the town supported a finding of discriminatory intent); *Sunrise Development,* 62 F. Supp. 2d at 768-76 (a resident's statement about an inundation of facilities that would alter the character of the town supported a finding of likelihood of success on the merits of a discriminatory intent claim).

[13] *A Helping Hand*, 515 F.3d at 366.

[14] *Id.* In *Project Life, Inc. v. Glendening,* the federal court found an ADA violation based on the defendants' "illegal acquiescence to [the] desire" not to have a program for recovering addicts "located in 'their backyard.'" *Project Life, Inc. v. Glendening,* 139 F. Supp. 2d 703, 708 (D. Md. 2001); *New Directions*, 490 F.3d at 295.

2013)(moratoria without legal basis violate the ADA); *United States v. City of New Orleans, Case No. 12-2011, April 24, 2013 (E.D. La., 2013)(*licensing moratoria are "actionable" under the ADA*);   CRC Health Group v. Warren*, Case No. 11-cv-196 (D. Me. 2012)(180–day moratorium violates ADA); *Metro Treatment of Maine v. City of Bangor*, Case No. 16-cv-00433, November 15, 2016 at p. 5 (D. Me 2016) (moratorium violates ADA).  Allowing "temporary moratoria" to pass ADA muster would open the floodgates to "temporary" measures that would make a mockery of civil rights laws (i.e., temporary moratoria on clinics or restaurants serving blacks, Jews, etc.).

### 6.      The Defendants' rules fail the "rational basis" test.

Legislation affecting disabled persons receives rational-basis review under the *Equal Protection Clause, Bd. of Trs. v. Garrett*, 531 U.S. 356, 366–67 (2001).   Under the rational basis test, a law will be upheld "upon a finding that it is `rationally related to a legitimate state interest.'" *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440 (1985).   However, federal courts routinely find that facially discriminatory rules (including moratoria) against clinics serving the disabled fail this "rational basis" test.  *A Helping Hand,* 515 F.3d at 358; *Mx Group*, 293 F.3d at 336-338; *Addiction Specialists,* 411 F.3d at 407; *Pac. Shores Properties*, 730 F.3d at 1149;  *Metro Treatment*, Case No. 16-

cv-00433, November 15, 2016 at p. 5.   The Licensing Moratorium and the

License Cap limits on expansion of treatment, in the middle of an epidemic, and

under policy goals of "there are too many clinics" and "we need time to study

the issue," are not rational by any measure.

Even a facially neutral rule can violate the ADA.  Federal courts

determine whether a decision is intentionally discriminatory by considering the

rule's historical background, the sequence of events leading up to the decision,

and its legislative or administrative history (including contemporaneous

statements by members of the decision-making body), among other factors.

*RECAP*, 294 F.3d at 49-50; *A Helping Hand*, 2005 WL 2453062, at *17;

*Pathways*, 133 F. Supp. 2d at 781-82.

Under the ADA, a decision by a title II entity to deny a benefit is

intentionally discriminatory if it "was motivated by unjustified consideration of

the disabled status of individuals who would be affected by the decision."

*Pathways Psychosocial v. Town of Leonardtown*, 133 F. Supp. 2d 772, 781 (D.

Md. 2001). [15]   When a decision is "made in the context of strong, discriminatory

---

[15] See also *A Helping Hand*,  2005 WL 2453062, at *16; *Tsombanidis v. West
Haven Fire Dep't*, 352 F.3d 565, 579-80 (2d Cir. 2003); *RECAP*, 294 F.3d at 49;
*Horizon House*, 804 F. Supp. at 695-97.

opposition[, it] becomes tainted with discriminatory intent even if the decision makers personally have no strong views on the matter." *Innovative Health Sys.*, 117 F.3d at 49.   This analysis cannot be performed based on the pleadings alone.

### C.      Defendants' intentional conduct entitles Plaintiff to damages.

"To prevail on a claim for compensatory damages under either the RA or the ADA, Plaintiff must show that Defendant violated his rights under the statutes and did so with discriminatory intent. Plaintiff may prove discriminatory intent by showing that Defendant was deliberately indifferent to his statutory rights." *R.W. v. Bd. of Regents*, 114 F. Supp. 3d 1260, 1288; *Boynton v. City of Tallahassee*, 650 F. App'x 654, 658–59 (11th Cir. 2016)("intentional" and "deliberate indifference" are equivalent terms).

In this case, Plaintiff has alleged intentional discrimination by virtue of the enactment of facially discriminatory statutes. Doc. 19 ¶¶ 20, 49, 54, 55, 63, 66, 69, 70 and 71.  In fact, the statutory findings in Section 1 of the Senate Bill 402 acknowledged, and as Plaintiff has alleged, an opioid epidemic is sweeping Georgia. 2016 Ga. Laws 343 § 1.  At the same time, the statutes intentionally foreclose expansion of standard of care treatment to these same disabled people. 2016 Ga. Laws 343 § 2(e).  This amounts to "both knowledge that a harm to a

20

federally protected right is substantially likely [the right of the disabled to addiction treatment] and a failure to act upon that . . . likelihood" [blocking expansion of treatment in the face of an opioid epidemic that is killing them]). *Boynton*, 650 F. App'x at 658–59.

Federal courts hold facial discrimination is a type of intentional discrimination under the Title II and can serve as proof of discriminatory intent. *Larkin v. Mich. Dep't of Social Servs*., 89 F.3d 285, 289 (6th Cir. 1996); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1500-01 (10th Cir. 1995); *First step, Inc. v. City of New London,* 247 F. Supp.2d 135, 150 (D. Conn. 2003).  The Licensing Moratorium and the License Cap are facially discriminatory and, therefore, provides evidence of intentional discrimination in and of itself.

**D.      Defendants are not entitled to Eleventh Amendment immunity.**

**1.      Defendants are not entitled to immunity under the ADA.**

Regarding Plaintiff's ADA claims, Defendants are not entitled to sovereign immunity under the Supreme Court's Eleventh Amendment abrogation analysis set forth in *United States v. Georgia* and *City of Boerne v. Flores*. *United States v. Georgia*, 546 U.S. 151, 159 (2006); *City of Boerne v. Flores*, 521 U.S. 507, 520–21 (1997).

As to the *Georgia* criteria, Plaintiff has alleged Title II violations with

21

sufficient specificity to satisfy its first two prongs—violations of Title II that amount to a violation of the Equal Protection Clause.  U.S. Const. amend. XIV, § 1 ("Equal Protection Clause");  *Georgia*, 546 U.S. at 159.  Plaintiff's claims allege violations of the Equal Protection Clause.  Doc. 19 ¶ 55.   Thus, it's clear that Plaintiff is making an "unequal treatment" claim.[16]

The third prong of *Georgia* is then analyzed under the *City of Boerne's* three-part "congruent and proportional" criteria. *Id*., *City of Boerne,* 521 U.S. at 520–21.   As to the first prong of *City of Boerne*, Plaintiff's alleges illegal discrimination against it, and its prospective patients, as previously stated.

As to the second prong of *City of Boerne*, the Eleventh Circuit has twice construed *Lane* as foreclosing this prong's analysis due to the overwhelming nature of disability discrimination in the public fora." *Gaylor v. Ga. Dep't of Natural Res.,* Case No. 2:11-CV-288 (N.D. Ga. Aug. 15, 2012) at *16; *see also Lane*, 541 U.S. 509.

As to the third prong of *City of Boerne*, the Supreme Court has cited irrational regulations as one example of disability discrimination that supported

---

[16] Federal courts don't require "magic words" in allegations sufficient to allow an ADA claim to proceed.  *United States v. Hialeah Hous. Auth*., 418 F. App'x 872 (11th Cir. 2011) (per curiam)(ADA claims require no "magic words.")

the need for Title II's prophylactic measures. *Lane,* 541 U.S. at 525.  The Fourth Circuit specifically endorsed Title II abrogation of Eleventh Amendment immunity in cases involving regulation of addiction clinics. *A Helping Hand*, 515 F.3d at 361 n. 2.

The Eleventh Circuit has concluded that Title II is a congruent and proportional response to the danger of unconstitutional discrimination. *See Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.,* 405 F.3d 954, 958-59 (11th Cir. 2005); *see also Phiffer v. Columbia River Corr. Inst.,* 384 F.3d 791 (9th Cir. 2004) (upholding Title II's abrogation in all applications), *cert. denied,* 546 U.S. 1137 (2006).

### 2.      Defendants are not entitled to immunity under the RA.

Regarding Plaintiff's RA claims, state agencies accepting federal funds waive Eleventh Amendment immunity and are deemed to consent to private suits under the RA. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292-93 (11th Cir. 2003).

### E.      Plaintiff is entitled to declaratory and injunctive relief.

Federal courts impose prospective injunctive relief under Title II to address systemic, historical failures.  *Disabled in Action v. Bd. of Elections in the City of N.Y.*, 752 F.3d 189, 201 (2nd Cir. 2014).   The Licensing Moratorium

23

and the License Cap violates the ADA in an intentional, systematic way.  This law is not "inadvertent," "accidental," or "unintentional." Rather, the rules qualify as a "systemic" or "historical" violation and must be addressed by the remedies provided under ADA Title II.

Defendants argue that Plaintiff is not entitled to declaratory relief, but fail to provide any basis for their contention.  *See* Doc. 14-1, p. 24-25 (Defendants' Brief).  Indeed, declaratory relief is wholly appropriate and will provide a "prompt resolution of the case" and requires no proof of irreparable injury.  Fed. R. Civ. Proc. 57; *Steffel v. Thompson,* 415 U.S. 452, 471-72 (1974)(no irreparable injury required);  *United Merchants & Mfrs., Inc. v. Henderson*, 495 F. Supp. 444, 446 (N.D. Ga. 1980)(appropriate to promptly resolve case).

In this case, Plaintiffs have set forth a plausible claim that its rights, and those rights of its prospective patients, have been violated by Defendants.  Plaintiff has also alleged that there is no adequate remedy at law or violation of this right during the pendency of the Licensing Moratorium and the License Cap.  Doc. 19 ¶  36 (Complaint).  Clearly, irreparable harm results when the Court does not order injunctive relief as it is otherwise impossible to expand treatment options to the disabled.  Doc. 19 ¶¶ 62, 66, 69, 71, 73 (Complaint).

## CONCLUSION

Based on the foregoing arguments, Plaintiff prays that this Court denies

Defendants' Motion to Dismiss.

Respectfully submitted this May 19, 2017.

s/James A. Dunlap Jr.
James A. Dunlap Jr., Esq.
James A. Dunlap Jr. & Assoc. LLC
Georgia State Bar No.  003280
4403 Northside Parkway NW
Suite 1413
Atlanta, Georgia  30327
404-354-2363
jim@jamesdunlaplaw.com

Counsel for Plaintiff

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1.D, I certify that the foregoing has been prepared in 14-point Times New Roman type face, in compliance with Local Rule 5.1. See N.D. Ga. Civ. R. 5.1, 7.1.D.

This 20th day of April, 2017.

<u>**s/James A. Dunlap Jr.**</u>
James A. Dunlap Jr., Esq.

## CERTIFICATE OF SERVICE

I certify that I have this day served the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send email notification

of such filing to the following attorneys of record:

Roger Chalmers, Esq.
Bradley Harder, Esq.

I further certify that I have mailed by United States Postal Service the

document to the following non-CM/ECF participants: NONE.

This May 19, 2017.

**s/James A. Dunlap Jr.**
James A. Dunlap Jr., Esq.

27