IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AARON PRIVATE CLINIC MANAGEMENT, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>FRANK W. BERRY, in his Official Capacity as Commissioner of the Georgia Department of Community Health; and NATHAN DEAL, in his Official Capacity as Governor of Georgia,<br><br>          Defendants. | 1:17-cv-1034-WSD |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Aaron Private Clinic Management, LLC's ("Plaintiff") Motion for Injunction Pending Appeal [39] (the "Motion"). Also before the Court is Defendants Frank W. Berry and Nathan Deal's ("Defendants") Motion to Seal Documents 41-3 and 41-4 to Allow Re-Filing with Protected Information Redacted [42] ("Motion to Seal") and Plaintiff's Rule 12(f) Motion to Strike [44] ("Motion to Strike") and Motion for Protective Order and Motion to Seal [48] ("Motion for Protective Order").

## I. BACKGROUND

On May 4, 2017, Plaintiff filed its First Amended Complaint seeking declaratory and injunctive relief, and damages, for violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 ("Rehabilitation Act") and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). Plaintiff argued that two recently promulgated Georgia statutes—O.C.G.A. § 26-5-21 ("Licensing Moratorium")[1] and O.C.G.A. § 26-5-40 et seq. ("Licensing Cap")[2]—

---

[1] The Licensing Moratorium, enacted by the Georgia Legislature in 2016, provides the following:
> A temporary moratorium on the acceptance of new applications for licensure of narcotic treatment programs authorized under this article through June 30, 2017, would provide the General Assembly with time to study the need for any changes to the licensure requirements for the operation of such programs and the enactment of any other additional laws to ensure the safety of Georgia's citizens. New applications for licensure of narcotic treatment programs in this state shall be temporarily suspended starting from June 1, 2016, through and including June 30, 2017, in order to permit the commission to complete its report and recommendations and to permit the General Assembly to act on those recommendations during the 2017 legislative session.
> . . .
> Between June 1, 2016, and June 30, 2017, the department shall not accept any new applications for licensure of narcotic treatment programs.

See O.C.G.A. § 26-5-21(e)-(f).

[2] The Licensing Cap, also known as the Narcotic Treatment Programs Enforcement Act ("NTPEA"), became effective on May 4, 2017 and supersedes the Licensing Moratorium. It provides that the DCH "shall create and promulgate

"illegally discriminate against the disabled, including barring the Department of Community Health ('DCH') from accepting new licenses to expand treatment for the disabled in Georgia." (First Amended Complaint [19] ("FAC") at 3-4). Plaintiff further argued that "[t]hese rules illegally block [it] from establishing an [o]pioid [t]reatment [p]rogram." (Id.). Plaintiff's First Amended Complaint asserted six counts, all based on the overarching claim that the Licensing Moratorium and Licensing Cap violate the Rehabilitation Act and Title II of the ADA because they are facially invalid, discriminatory, and, through disparate treatment, "cause disproportionate impact to APC and the disabled persons APC intends to serve." (FAC ¶¶ 56-85).

On May 18, 2017, Defendants filed their Motion to Dismiss [23] arguing that (1) Plaintiff lacked standing under the ADA and Rehabilitation Act; (2) the Eleventh Amendment and sovereign immunity barred Plaintiff's money damages claims; (3) Plaintiff was not entitled to recover money damages because its

---

reasonable and necessary minimum standards of quality and services for narcotic treatment programs," including those relating to, for example, adequate and safe buildings or house facilities where programs are offered, adequate equipment for the delivery of the programs, and continuing evaluation of the effectiveness of programs. See O.C.G.A. § 26-5-42. The Licensing Cap contemplates an open enrollment period for narcotic treatment program licensing applications, with the first open enrollment period to be held December 1, 2017 through December 31, 2017. See O.C.G.A. § 26-5-46.

Complaint lacked plausible, fact-based allegations of intentional discrimination; and (4) Plaintiff was not entitled to declaratory or injunctive relief.  ([23.1] at 12-30).  On November 16, 2017, the Court granted Defendant's Motion to Dismiss—holding that Plaintiff lacked standing to bring the lawsuit.  ([34] ("November 16th Order") at 17).  The Court did not address Defendants' additional arguments regarding whether the Eleventh Amendment and Sovereign Immunity bar Plaintiff's damages claims, or whether Plaintiff should be barred from recovering money damages because its Complaint lacks "fact-based allegations of intentional discrimination.  ([34] at 17, n.9).  The Court similarly chose not to address Plaintiff's underlying substantive claims.

On November 20, 2017, Plaintiff filed the Motion.  In it, Plaintiff argues it is entitled to injunctive relief on appeal because (1) Plaintiff demonstrates a substantial likelihood on the merits because the Licensing Moratorium and Licensing Cap are facially discriminatory; (2) Plaintiff, "and those persons it represents will suffer irreparable injury" because "victims of discrimination sustain irreparable injury"; (3) the "Licensing Moratorium and the Licensing Cap violate Plaintiff's rights, and the rights of the persons it seeks to protect, under the Equal Protection and Due Process Clauses of the U.S. Constitution"; (4) the balance of hardships "tips strongly" in Plaintiff's favor; (5) the injury to Plaintiff, and those it

4

seeks to protect, "outweigh any potential damage the proposed injunction may cause the Defendants"; and (6) granting the injunction pending appeal is in the public interest.  ([39.1] at 17-25).

On December 4, 2017, Defendants filed their Response in Opposition to Plaintiff's Motion for Injunction Pending Appeal [41] (the "Response").[3, 4, 5]

---

[3] On December 7, 2017, Defendants filed their Motion to Seal.  Defendants request that the Court seal Documents 41.3 and 41.4 "on the grounds that those documents were inadvertently filed without redaction of personal data identifiers, specifically, a home address which appears on two pages within the documents." ([42] at 1).  The Court grants Defendants Motion to Seal.

[4] Plaintiff seeks to strike, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, information in Defendants' Response and accompanying exhibits that Plaintiff has submitted two Narcotic Treatment Program applications.  ([44] at 2). Plaintiff states that Defendants confuse Plaintiff with Aaron Private Clinic Professionals, P.C.  (Id.).  Plaintiff requests that the Court order Defendants to "withdraw their misleading Declaration and disclosure of immaterial, private, confidential licensing information of non-party Aaron Private Clinic Professionals, P.C., and a non-party physician."  (Id. at 44).  Plaintiff then refers to Doc. Nos. 41, 41.1, 41.2, 41.5, 43.1, 43.2 and states Defendants should be "allowed to refile their response without the non-party NTP application materials."  (Id.).

Rule 12(f) provides: "The Court may strike from a pleading an insufficient defense of any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Plaintiff's use of Rule 12(f) is inappropriate because it seeks to strike material from a document other than a pleading, and for that reason the Court denies Plaintiff's Motion to Strike.  The Court notes, however, that it recognizes the distinction between Plaintiff and Aaron Private Clinic Professionals, P.C. and takes this fact into account.  Moreover, the information Plaintiff seeks to strike does not impact the Court's holdings here.

[5] Plaintiff also asks that the Court order Doc. Nos. 43.1 and 43.2 sealed, and that Defendants pay Plaintiff's reasonable attorney's fees and costs incurred in having to seek such relief.  ([48] at 9).  Plaintiff asserts that these documents

Defendants argue that the Motion "merely rehashes arguments previously considered and rejected by this Court in its ruling on Defendants' [M]otion to [D]ismiss." ([41] at 1). Defendants further contend that Plaintiff "has presented no evidence that it will suffer irreparable injury in the absence of a stay or injunction pending appeal; its assertion of harm to disabled persons is entirely speculative; and, in any event, the assertion does not amount to a showing of irreparable harm to [Plaintiff]—who is the only plaintiff before this Court—that would support injunctive relief." (Id. at 1-2). Defendants note finally that Plaintiff's "request for equitable relief is further undermined by its own pleadings which seek money damages on its claims" because "the possibility of a monetary recovery bars relief in equity as it demonstrates that the claimed injury is not

---

include confidential trade secrets and confidential business information. Plaintiff states that disclosure of these documents "would substantially injure [it] by placing it at a disadvantage when negotiating future commercial leases, future business relationships, . . .and avoiding discriminatory conduct by local community elements." ([48] at 5). Protection of a "trade secret" requires a party to demonstrate that the party "consistently treated the information as closely guarded secrets, that the information represents substantial value to [the party], that it would be valuable to [the party's] competitors, and that it derives its value by virtue of the effort of its creation." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 253 F.3d 1304, 1313-14 (11th Cir. 2001). Here, Plaintiff advances only conclusory statements that at least some of the information identified in the documents it seeks to seal contain trade secrets and other confidential business information. Plaintiff fails to identify what information constitutes trade secrets and why, or that it has sought to protect these alleged trade secrets from disclosure. Accordingly, the Court denies Plaintiff's Motion for Protective Order.

6

irreparable." (Id. at 2).

## II.  DISCUSSION

### A.  Legal Standard

The Federal Rules of Appellate Procedure require that a party seeking a stay or injunction pending appeal first seek the stay or injunction in the district court. See Fed. R. App. P. 8(a)(1)(C).  Rule 62(c) of the Federal Rules of Civil Procedure governs the granting of an injunction pending appeal and provides, in relevant part, that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(c).

In determining whether to grant an injunction on appeal, a court should consider the following four factors:

1) the likelihood that the moving party will prevail on the merits;

2) the prospect of irreparable injury to the moving party if relief is withheld;

3) the possibility of harm to other parties if relief is granted; and

4) the public interest.

Freeman v. Cavazos, 923 F.2d 1434, 1437 (11th Cir. 1991); Garcia-Mir v. Meese, 781 F.2d 1450, 1453.  The Eleventh Circuit has held that a preliminary injunction

7

is an "extraordinary and drastic remedy" that will not be granted unless the "movant clearly carries the burden of persuasion as to the four prerequisites." Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotations omitted); see also Siegel v. LePore, 234 F.3d 1136, 1176 (11th Cir. 2000) (en banc).  Although, "[o]rdinarily[,] the first factor is the most important," an injunction may also be granted upon a lesser showing of a "substantial case on the merits" where "the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay."  Garcia-Mir, 781 F.2d at 1453 (internal quotations omitted).

  B. <u>Analysis</u>

  The Court finds that an injunction pending appeal is not warranted.  First, for the reasons stated in this Court's November 16th Order granting Defendants' Motion to Dismiss, the Court finds that Plaintiff lacks standing to bring this suit. "The first component of the likelihood of success on the merits prong usually examines whether the plaintiffs have standing in a given case." Jack's Canoes & Kayaks, LLC v. National Park Service, 933 F. Supp. 2d 58, 76 (D.D.C. 2013) (finding plaintiff lacked standing to assert its claim for a declaratory judgment that the district never effectively transferred administrative jurisdiction and thus could not demonstrate it could succeed on the merits of the claim); see also, SIL CAAM,

LLC v. RBC Bank (USA) (Inc.), 2011 WL 6136499, at *6 (N.D. Ga. Dec. 9, 2011) (finding the plaintiff failed to show likelihood of success on the merits because it "lack[ed] a substantial likelihood of demonstrating standing").  Because Plaintiff lacks standing, it thus cannot demonstrate it is likely to succeed on the merits.

Plaintiff similarly fails to show that it will suffer irreparable harm if an injunction on appeal is not granted.  Plaintiff asserts a number of grounds allegedly showing why it is suffering, or may at some time in the future suffer, irreparable injury, including that (1) irreparable injury can be presumed by the alleged deprivation of Plaintiff's rights protected by the Equal Protection and Due Process clauses and the ADA; (2) those individuals that Plaintiff seeks to protect are being denied access to medical care; (3) the alleged projected rate of opioid-related deaths in the next decade is 13,000; (5) Plaintiff is being stigmatized because of Defendants' discrimination; and (6) Plaintiff's inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable.  None of the grounds asserted by Plaintiff, however, show how Plaintiff is individually injured or impacted as a result of Defendants' actions.

While it may be true in some instances that a stigma may arise from a defendant's discrimination sufficient to constitute irreparable injury, Plaintiff falls far short of showing that it is directly suffering a stigma.  Plaintiff alleges only

9

vague facts and legal conclusions that its rights are being deprived, and that it and "those it seeks to protect"—individuals not party to this lawsuit—are being denied certain medical care and being stigmatized. Plaintiff's claim that it is suffering irreparable harm based on the potential deaths of 13,000 prospective patients, is not only nonsensical, it is wildly uncertain. Finally, without addressing each and every case cited by Plaintiff in support of its argument that it is, or will, suffer irreparable injury unless the Court grants an injunction on appeal, the Court notes that it has considered the cases cited by Plaintiff and finds that they either do not apply to the facts of this case or are non-binding precedent.

The Court also finds that, if it grants an injunction here, the possibility of harm to the other parties is great. An injunction would prevent Defendants from enforcing a presumed constitutional law to protect and treat opioid-addicted persons. Defendants state that the statutes Plaintiff seeks to enjoin from enforcement accomplish the following:

> [They] protect Georgia's health care consumers by ensuring that they have access to quality services, by allowing for the expansion of treatment programs where there is a need for such programs, and by limiting expansion to such need so that [Georgia Healthcare Facility Regulation] has sufficient resources to fulfill its ongoing obligation to inspect existing programs to ensure continued compliance with the program requirements.

([41] at 3). Defendants advance compelling reasons justifying why granting the relief requested by Plaintiff may in fact impede the facilitation and administration of resources to support opioid-addicted persons.

Finally, on balance, the public interest weighs against granting Plaintiff's requested injunction on appeal. The Court acknowledges and appreciates the gravity of the current opioid epidemic in this nation. Without a doubt, it is a serious matter that the nation must face and determine how best to respond. What is also clear to the Court, however, is that the statutes Plaintiff is seeking to enjoin from enforcement here are an attempt to address the opioid-epidemic by creating greater efficiency of resources and to protect opioid-addicted individuals.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Injunction Pending Appeal [39] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Rule 12(f) Motion to Strike [44] and Motion for Protective Order and Motion to Seal [48] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal Documents 41-3 and 41-4 to Allow Re-Filing with Protected Information Redacted [42] is **GRANTED**.

**SO ORDERED** this 4th day of January, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE